IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

CECIL MARK BLACKWOOD,                )
JAMES WEBRE BLACKWOOD, JR.,
BRADFORD AMES WHITE, and             )
WILLIAM L. BLACKWOOD,
                                     )
                Plaintiffs
                                     )
        v.                                          No. 3:03-cv-691
                                     )
R. W. BLACKWOOD,
DONNA BLACKWOOD,                     )
and RON BLACKWOOD,
                                     )
                Defendants
                                     )

## MEMORANDUM OPINION

This is an action under the Lanham Act alleging trademark infringement and trademark dilution concerning the use of the mark "Blackwood Brothers" as a musical group. Currently pending is the defendants' motion for summary judgment in which defendants claim that they own the mark Blackwood Brothers based on priority of use; that they have exclusive rights against plaintiffs such that plaintiffs' use of the name "Blackwood Brothers" is an infringement of their trademark, and that defendants do not infringe any of plaintiffs' rights in the Blackwood Brothers or

Blackwood Brothers Quartet marks [Court File #18]. Because questions of material fact remain to be determined, the motion will be denied.

I.

*Factual Background*

The following factual allegations will be considered in the light most favorable to the plaintiffs.

In 1934, a gospel music group was formed under the name "Blackwood Brothers Quartet." They also performed as the "Blackwood Brothers." The original group consisted of four individuals: Roy Blackwood, Doyle Blackwood, James Blackwood, Sr. (the father of plaintiff James Webre Blackwood, Jr.), and R.W. Blackwood, Sr. (the father of defendant R.W. and Ron Blackwood). Although the composition of the group has changed over the years, the group itself has performed substantially continuously throughout the country and on numerous broadcasts and recordings from 1934 to the present under the Blackwood Brothers name and has sold over 40 million recordings.

The group first rose to national fame in June 1984 when they won first place on "Arthur Godfrey's Talent Scouts." At that time, the members of the group

were R.W. Blackwood, Sr., James Blackwood, Sr., Bill Lyles, Bill Shaw, and Jack Marshall. Two weeks later, R.W. Blackwood, Sr., and Bill Lyles died in a plane crash. Soon thereafter, Cecil Blackwood joined the group.

From 1954 to 1981, the Blackwood Brothers continued to perform. Although members came and went during this time, James Blackwood, Sr., and Cecil Blackwood were constants throughout the period. In 1981, James Blackwood, Sr., left the Blackwood Brothers to start his own group under a different name. However, plaintiffs claim that throughout this period James Blackwood, Sr., continued to exercise control over the actions of the Blackwood Brothers. Cecil Blackwood continued with the Blackwood Brothers until his death in November 2000.

Between 1954 and Cecil Blackwood's death in November 2000, various plaintiffs and defendants were members of the Blackwood Brothers, along with James, Sr., and Cecil. Plaintiff James Webre Blackwood, Jr. (Jimmy) was a member of the group from 1970 to 1986. Plaintiff Cecil Mark Blackwood (Mark) was a member of the group at various times in the periods from 1989 to1991 and 1993 to1996. Plaintiff William L. Blackwood was a member of the group from 1970 to 1973. Accordingly, the last time any of the plaintiffs were in the Blackwood Brothers group was nine years ago in 1996.

Defendant R.W. Blackwood was a member of the Blackwood Brothers from 1979 to 1988. In July 2000, he rejoined the Blackwood Brothers group and performed with Cecil Blackwood on tour until Cecil's death in November. Therefore, from July to November 2000, R.W. and Cecil were the only members of the Blackwood Brothers group with the last name Blackwood, and at the time of Cecil's death, R.W. was the only member of the Blackwood Brothers group named Blackwood. In December 2000, R. W., Cecil's widow, and other members of the Blackwood Brothers went on a brief tour to commemorate Cecil's many years of performing with the group.

Shortly after Cecil's death, defendant Ron Blackwood (Ron) joined his brother R.W. to continue with the Blackwood Brothers group. R.W. and Ron have continued as the Blackwood Brothers, and presently are joined in the group by their wives, Donna Blackwood and Shelley Blackwood. They continue to identify the group as the Blackwood Brothers and currently perform daily at the Black Bear Jamboree Theater in Pigeon Forge, Tennessee, under the name Blackwood Brothers.

In February 2001, approximately 20 years after he quit performing with the Blackwood Brothers group, James Blackwood, Sr., issued a public announcement that he was officially retiring the names "Blackwood Brothers" and

"Blackwood Brothers Quartet." In February 2002, James Blackwood, Sr., passed away.

In addition to performing under the names "Blackwood Brothers" and "Blackwood Brothers Quartet," defendants R.W. and Donna Blackwood have performed in a musical group under the name "Blackwood Singers" since 1967. They have done so continuously to the present time. This group has also been successful and have had a hit single on the Billboard Top 100 Country. R.W. and Donna Blackwood own U.S. Trademark Registration No. 1,808,038, issued on November 30, 1993, for the mark "Blackwood Singers." That mark is now incontestable pursuant to 15 U.S.C. § 1065.

In April 2002, the plaintiffs formed a musical group under the name "The Blackwood Brothers Quartet." They continue to perform as such at the present time. April 2002 is the first time since 1996 that any of the plaintiffs have performed in a group using the name "Blackwood Brothers." In fact, it is the first time plaintiff Brad White has ever sung in a musical group using the name "Blackwood Brothers."

Plaintiffs have submitted an application for a U.S. Trademark registration for THE BLACKWOOD BROTHERS QUARTET. The application was refused by the U.S. Trademark Office on the ground that their mark is confusingly similar to R.W.

and Donna Blackwood's incontestable registration for the mark BLACKWOOD SINGERS.

In March 2003, defendants informed the plaintiffs that the plaintiffs' use of the mark "The Blackwood Brothers Quartet" was an infringement of the defendants' superior rights in the marks "Blackwood Brothers" and "Blackwood Singers." Further, defendants have filed an application for U.S. Trademark registration for BLACKWOOD BROTHERS. The application was not rejected by the Trademark Office and passed to publication. However, plaintiffs have opposed defendants' registration of the Blackwood Brothers mark in the Trademark Office, asserting essentially the same grounds alleged to support their claims in this case.

II.
*Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law.

6

Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion.  However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.*  Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial.  *Catrett*, 477 U.S. at 322.

III.

***Analysis***

The critical issue in this case is who owns the mark "Blackwood Brothers."  Ownership of trademark or service mark rights is obtained by actual use.

7

*Allard Enterprise, Inc. v. Advance Programming Resources, Inc.*, 249 F.3d 564, 571 (6th Cir. 2001).  Priority of ownership stems from priority of continuous use. *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991).  However, the use must be "deliberate and continuous, not sporadic, casual or transitory."  *Circuit City Stores, Inc. v. Carmax, Inc.*, 165 F.3d 1047, 1054 (6th Cir. 1999).

Lack of actual continuous usage of a mark can result in a loss of legal rights in the mark.  The mark is abandoned when its trademark use has been discontinued with the intent not to resume.  15 U.S.C. § 1127.  An "intent not to resume" means an intent not to resume use within the reasonably foreseeable future rather than an intent never to assume use.  *Silverman v. CBS, Inc.*, 870 F.2d 40 (2d Cir. 1989).  Proof of non-use of a mark by a party for three years creates a presumption that the mark has been abandoned.  15 U.S.C. § 1127.  This presumption applies to unregistered common law trademarks.  *Miller Brewing Co. v. Oland's Breweries*, 548 F.2d 349 (CCPA 1976).  In addition, an explicit admission that an entity is discontinuing the use of a mark effectively abandons the mark. *Intrawest v. Western National Bank of Denver*, 610 F.Supp. 950, 958 (D. Colo. 1985).

Defendants contend that the plaintiffs effectively abandoned any use of the mark when they left the group in 1996, and that the defendants are a continuing part of the group which had its origins in 1934. However, plaintiffs claim that although James Blackwood, Sr., quit performing with the group in 1981, he still maintained significant control over the group such that he did not abandon any rights he had in the use of the name. I am of the opinion that questions of material fact remain to be determined with respect to whether James Blackwood, Sr., maintained sufficient control over the group between 1981 and November 2000 so as to still have an interest in use of the name "Blackwood Brothers." There is simply insufficient evidence in the record to determine this issue either way.

I also believe that a question of material fact exists with respect to the effect of James Blackwood, Sr.'s apparent announcement in 2001 that he was retiring the name "Blackwood Brothers" and "Blackwood Brothers Quartet."

Finally, the plaintiffs contend that they obtained the right to use the Blackwood Brothers name through the consent of the widow of James Blackwood, Sr. I am of the opinion that questions of material fact remain with respect to whether any rights in the name pass to his widow and, if so, whether they were assigned to the plaintiffs.

IV.

***Conclusion***

In light of the foregoing, defendants' motion for summary judgment [Court File #18] will be denied.

Order accordingly.

                                              ***s/ James H. Jarvis***
                                        UNITED STATES DISTRICT JUDGE